UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROSE MARY McMANUS,

                Plaintiff,

     v.                                         **DECISION AND ORDER**
                                               12-CV-036S

TOWN OF HAMBURG,

                Defendant.

## I. INTRODUCTION

Rose Mary McManus was a 15-year employee of the Town of Hamburg when she resigned from her full-time position as a civil-service messenger in October of 2010. But that resignation, she contends, was compelled. She claims that council members and a supervisor on the Town Board "forced her to sign [the resignation] letter under threats of being fired." (Compl., ¶ 18.) She further contends that Thomas Best, Sr., now the highway superintendent, and at one time a Town of Hamburg council member, subjected her to "less favorable treatment than Linda Rogers," with whom Best had had a romantic relationship. (Id., ¶ 10.) According to McManus, this preference for Rogers, and generally a preference for women who fit a "subservient stereotype" violated Title VII of the 1964 Civil Rights Act, which prohibits, among other things, sex-based discrimination in the workplace. She further contends that she was retaliated against for reporting this allegedly discriminatory behavior.

The Town of Hamburg now moves for summary judgment. For the following reasons, that motion is granted.

## II. BACKGROUND

**A.      Facts**

At the time of the events leading to this lawsuit, the Town of Hamburg was governed by a board consisting of four at-large council members and a town supervisor, each elected to four-year terms. Rose Mary McManus, a woman, was first hired by the Town of Hamburg in 1995 as a part-time clerk in the Town Council's office. In that role, she was given varied assignments by various council members. She was later promoted to a full-time position entitled "messenger." As a messenger, she gathered and delivered the mail, handled the payroll, took messages, and oversaw the management of supplies and equipment for various Town departments.

According to the Town, around January of 2010 it was "in the process of investigating options for reducing costs and increasing efficiency." (Def.'s Stmnt., ¶ 18; Docket No. 39.) As part of that process, it "analyzed the duties of messenger and came to a determination that it did not warrant a full time position." (Id., ¶ 19.) On January 7, 2010, McManus met with Steven Walters, then (and now) the supervisor for the Town, and Kevin Smardz, a Town councilman from 2008 until 2010. To McManus' surprise, they told her that her position was immediately being reduced to part time and that there was no guarantee she would keep the job.  According to the Town, however, McManus informed Walters and Smardz that she was "looking to retire in October" anyway, and thus the parties agreed that she could stay in her current position until she reached her 10-year anniversary of full-time work (triggering certain retirement benefits) and that she would resign at the end of October 2010. (See Walters Dep. Tr., 45:19 – 46:10.) McManus then

composed and submitted a letter of resignation, dated January 7, 2010, reflecting this agreement.[1]

But whatever alleged benefits McManus secured in the agreement, she later repudiated it and requested, by a separate letter to the Town Board dated August 31, 2010, to rescind the letter of resignation; she claimed that it wasn't valid, that she signed it under duress. "If I did not make that deal, under pressure," she avows, "I could have just been fired for an illegitimate reason and left with nothing." (McManus Aff., ¶ 62.) "I never wanted to retire, but I was pushed into a corner by Supervisor Walters and Councilman Smardz," wrote McManus. (Id., ¶ 69.)

Her removal, she contends, was connected to her next complaint – that Linda Rogers, another Town employee, was given preferential treatment by Thomas Best, the highway superintendent for the Town. McManus lodged a formal, internal complaint to this end on March 26, 2010.  "I am filing this complaint for discrimination and harassment" she wrote, because "I believe I have been subject to [sic] harassment and discrimination by my supervisor's [sic] who allow and give favorable treatment to a female employee, who has a romantic relationship with Supervisor Thomas Best, Sr." (Harassment Compl., Pl.'s Ex. 5; Docket No. 45-2.) She concluded, "[T]he only way for female employees to be treated fairly and receive job benefits and advancements is to be romantically involved or a friend of Supervisor's Best [sic] romantic interest[,] Linda Rogers." (Id.)

---

[1] A typed first draft of this letter was edited in pen by Walters. He removed a reference to the January 7th meeting and made a change so that McManus' retirement would be definitive; he changed "planning to retire on October 31, 2010" to "effective October 31, 2010, I will retire." (See Pl.'s Ex. 9.) These edits were incorporated into a final typed version of the letter. (See Pl.'s Ex. 10.)

She made similar accusations in a complaint filed with the New York State Division of Human Rights on September 9, 2010.

On September 16, 2010, the Board, referring to a section of the New York Code of Rules and Regulations that prohibits a resignation from being "withdrawn, cancelled or amended after it is delivered to the appointing authority, without the consent of the appointing authority," denied her request to rescind her resignation. (Walters Letter, Def.'s Ex. DD; Docket No. 38-12.) It thus became effective on October 31, 2010.

**B.    Procedural history**

McManus filed her complaint in this Court on January 13, 2012.  Afer discovery, the Town of Hamburg moved for summary judgment on February 24, 2014. Briefing concluded on May 5, 2014, at which time this Court took the motion under consideration.

### III.  DISCUSSION

**A.    Summary judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398

U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## B.    Title VII and applicable standards

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). It further makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a); Danials-Kirisits v. New York State Office of Court Admin., No. 05-CV-800S, 2013 WL 1755663, at *6 (W.D.N.Y. Apr. 24, 2013).

McManus claims that her discharge, the environment in which she worked, and actions taken in response to her complaints of discrimination all violated Title VII. Thus, she brings three separate causes of action:  a constructive-discharge claim, a hostile-work environment claim, and a retaliation claim.

5

Ultimately to sustain her discharge claim, McManus must show that sex was a motivating factor in her discharge. 42 U.S.C. § 2000e–2(m).

To prevail on a claim for retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (internal quotation marks omitted). Ultimately, she must show that her complaints were a "but-for" cause of a materially-adverse action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013).

Without direct evidence of discrimination, these claims are analyzed under the Supreme Court's familiar McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); see also Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004). Under that framework, a plaintiff must first establish a *prima facie* case by adducing sufficient evidence to permit a rational trier of fact to find that she is a member of a protected class; was qualified for her position; and was subject to an adverse action suffered under "circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for its challenged action. McDonnell Douglas, 411 U.S. at 802; Terry, 336 F.3d at 138. If the employer does so, the McDonnell Douglas presumptions disappear, and the plaintiff must then set forth sufficient

evidence to support a reasonable inference that discrimination occurred. See James v. N.Y. Racing Ass'n., 233 F.3d 149, 156 (2d Cir. 2000).

Finally, "to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).

## C.   McManus' claims

It is obvious to this Court that McManus has tried to recast her complaint in the face of the Town's motion for summary judgment. The pleadings and pre-litigation material in this case make clear that it began as a so-called "paramour-preference" case. The gravamen of McManus' claim – at the federal, state, and internal levels alike – was that Thomas Best gave impermissible preference to his rumored-to-be girlfriend, Linda Rogers. Indeed, the complaint, short on facts to begin with, alleges simply that McManus "was subjected to less favorable treatment than Linda Rogers," who "has been involved in a romantic relationship with Superintendent Thomas Best." (Compl., ¶ 10). It was specifically "this conduct" that "created a hostile work environment for Plaintiff." (Id.) That is the beginning – and the end – of factual allegations that even remotely suggest McManus was discriminated against because of her sex.

Likewise, the only allegation raising any possibility of an inference of sex-based discrimination in the Division of Human Rights complaint reads, "Beginning in January 2010 and continuing to date, the respondent has subjected me to less favorable treatment

than Linda Rogers, a female employee who has a romantic relationship with Superintendent Thomas Best, creating a hostile work environment." (Verified NYSDHR Compl., ¶ 3, Pl.'s Ex. 7; Docket No. 45-2.)

Her internal complaint, lodged on March 26, 2010, is no different:

> I believe I have been subject [sic] to harassment and discrimination by my supervisors who allow and give favorable treatment to a female employee, who has a romantic relationship with supervisor Thomas Best, Sr. This female employee, Linda Rogers, has been allow [sic] preferential treatment and job benefits for herself and her friends in exchange for this romantic relationship.

(Pl.'s Ex. 5.)

To be sure, there is evidence to support this contention. Town Councilman Joseph Collins, for example, avows that Best told him that he was forcing McManus to retire to make room for Rogers. (Collins Aff., ¶ 16; Docket No. 45-6.) But regardless of the proof, this claim was dead on arrival.

As the Town correctly argues, these allegations do not a Title VII claim make. The Second Circuit has recently observed that "[o]ur Circuit has long since rejected 'paramour preference' claims, which depend on the proposition that 'the phrase 'discrimination on the basis of sex' encompasses disparate treatment premised not on one's gender, but rather on a romantic relationship between an employer and a person preferentially treated." Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013); see also DeCintio v. Westchester Cnty. Med. Ctr., 807 F.2d 304, 308 (2d Cir. 1986) (no Title VII claim where a supervisor and employee engaged in a romantic partnership; where supervisor established special requirement for a position solely as a pretext to enable him to give it to that employee; and where claimants were precluded from applying

for the position due to the special requirement). In short, the very allegation serving as the foundation of McManus' complaint – that Best and others gave Rogers preferential treatment and that this treatment led to McManus' ouster – is not a viable Title VII claim. It may be discrimination, but it is not discrimination based on sex. And that is the *sine qua non* of a Title VII claim.  See Decinto, 807 F.2d at 308 (appellees were not prejudiced because of their sex; they were discriminated against because the supervisor preferred his paramour).

McManus does not dispute this. Instead, she now tries to make this a "gender-plus" case – a case about "stereotypes" and about Best's apparent preference for women who fit his idea of what a woman should be. McManus, in her telling, is not a woman who fits this stereotype, and was therefore squeezed out to make room for Rogers, who does.

But even if this recasting were permissible (and the Town argues vehemently that it is not), and even if it stated a Title VII claim, there is a more fundamental problem with McManus' case: there is no evidence to support it.

Indeed, no matter what the claim is in this case, the evidence that McManus was discriminated against because of her sex is sorely lacking. McManus' fact section of her memorandum of law directs this Court to her statement of material facts, and affidavits from her, her attorney, and Councilman Joseph Collins. None of these provide sufficient facts to sustain a Title VII claim. A sampling follows.

In her affidavit, McManus states:

- For those women [Best] did like, he treated them well and did favors for them.

- [I]n January 2008 supervisor Walters, and then[-] Councilman Best met with me to give me more job

duties, and if I did not agree to perform those duties I
would be fired.

- During that same period, he constantly told me to switch
parties so that I was on his side.

- Other incidents included Councilman Smardz coming
into my office and yelling at me for using his name
around town.

- In 2008, Supervisor Walters and now-Superintendent
Best bugged my office in order to find cause to get rid
of me.

(¶¶ 26, 30, 36, 37; Docket No. 45-1.)

McManus' attorney's affidavit provides:

- Plaintiff made many informal, verbal complaints about
Superintendent Best, his treatment of others better than
herself, and his relationship with Ms. Rogers and fear
he wanted to replace Plaintiff with Ms. Rogers to
Councilman Collins.

- Ryan Snyder is a connected Republican in Hamburg
and was privy to some private conversations between
Republican councilmembers. Mr. Snyder called Plaintiff
in the Spring of 2010 and told her Defendant was trying
to get rid of her, and that she was being watched so she
should be careful.

(¶¶ 24, 55; Docket No. 45-4.)

Collins' affidavit, under the heading "harassing and disparate treatment," provides:

- Even before Ms. McManus was compelled to sign her
prospective resignation letter, she contacted me and
told me she feared Supervisor Walters and
Superintendent Best were going to continue to harass
her as well as retaliate against her, and that she
believed she was going to be fired.

- I also learned that Superintendent Best, with the
assistance of Councilman Smardz and Supervisor
Walters had previously planned to fire Ms. McManus

10

  and replace her with a close friend of Superintendent Best, Linda Rogers.

- Through further questioning, I could see a clear pattern of harassment, retaliation, and the allowance of a hostile work environment put in place by Town of Hamburg Supervisor Walters, Superintendent Best, and Councilmembers Ziegler and Smardz.

(¶¶ 10, 12, 20.)

In her statement of facts (required by Local Rule of Civil Procedure 56(a)(2)), McManus states:

- [I]t is [my] contention, supported by former Councilman Joseph Collins, that Superintendent Best, with the cooperation of Supervisor Steven Walters and Councilman Kevin Smardz, instituted and permitted a stereotype of women as subversive [sic][2] in the workplace, especially those who worked for Superintendent Best, and only rewarded those who submitted to that workplace.

- As stated in the memorandum of law, Plaintiff's Declaration, and the Collins Declaration, there has been an ongoing hostile and harassing environment that included discrimination and retaliation against individuals who challenged the stereotype created by Defendant, and Plaintiff was one of those individuals.

- Plaintiff complained of the harassment she suffered and witnessed but it was also common knowledge at the Town that Superintendent Best had many controlling relationship [sic] with women, and that he would favor those who submitted to his control in the workplace. This history and reputation of stereotyping women as subservient forms the backbone of Plaintiff's claims and was known to many at Defendant[;] it creates additional disputes of fact that make this case one not appropriate for summary judgment.

---

[2]This Court assumes "subversive," referring to someone who intends to undermine an established order, is, in this context, a malapropism for "subservient," meaning obsequious or servile.

(¶ 7; Docket No. 45.)[3]

There is in these documents many references to "harassment," but noticeably absent are any specific instances of prohibited conduct. It appears instead that McManus' claim is based on the "common knowledge around town . . . that Mr. Best was a womanizer" and that he was "known as a bully, a heavy drinker, and a heavy gambler." (McManus Aff., ¶ 23.)  Or perhaps it is based on the allegation that Collins "learned that there was a prior sexual harassment complaint and subsequent settlement due to the harassment by Superintendent Best of a Town of Hamburg *female* police officer." (Collins Aff., ¶ 27) (emphasis in original). But aside from rumor, aside from what some people heard of Best's background, there is no evidence that *McManus* was discriminated against because she is a woman or that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment." See Whidbee, 223 F.3d at 69. Indeed, McManus' memorandum of law – long on argument but short on facts – is rife with conclusory allegations unconnected to the record in this case. McManus argues, for example, that "Plaintiff here has alleged and provided evidentiary support that she suffered an adverse action and was subjected to many harassing actions, and forced to witness many more, all because of her gender." (Pl.'s Br. at 20.) Again, "Superintendent Best treated certain females (not just Ms. Rogers) more favorably than Plaintiff and other females because they were willing to accept his sexually hostile behavior." (Id. at 21.)  But there is no citation to the record following these sweeping statements. And, as noted, even an independent

---

[3]The final two selections come from the portion of McManus' responsive statement of facts identified as paragraph "A."

review of the record uncovers no support for them. So questions linger: What are these "harassing actions"? What "sexually hostile behavior"? What did he do? When did he do it?

Without sufficient answers to these crucial questions, McManus' evidence is patently insufficient to establish a *prima facie* case on her unlawful discharge and hostile-work environment claims. In turn, these claims cannot withstand a motion for summary judgment. <u>See</u> <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998) (quoting <u>Anderson.</u>, 477 U.S. at 251) (modifications omitted) ("To defeat a motion [for summary judgment], 'there must be evidence on which the jury could reasonably find for the non-movant.'").

****

For related – albeit somewhat different –  reasons her retaliation claim also fails. To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) she participated in a protected activity known to defendant; (2) an adverse action was taken against the plaintiff; and (3) there is a causal connection between the protected activity and the adverse action. <u>Burlington</u>, 548 U.S. at 70;  <u>Gregory v. Daly</u>, 243 F.3d 687, 700 (2d Cir. 2001).

Here, McManus' claim fails at the first prong: she did not engage in a protected activity.

Although McManus filed two formal claims alleging that she was discriminated against, neither of those claims "opposed any practice made an unlawful employment practice by" Title VII.[4] <u>See</u> 42 U.S.C. § 2000e–3(a). As set forth above, in her internal

---

[4]McManus also alleges that she voiced complaints at other times. But these complaints clearly had no association with any alleged discrimination based on sex. She complained that: (1) Best gave her more job duties; (2) Walters "bugged" – presumably placed recording devices – in her office; (3) Best gave

complaint McManus alleged that Best and others gave preference to Rogers.  In her Human Rights complaint she raised similar concerns, and further alleged that she was retaliated against for filing the initial complaint. But, as also set forth above, this type of discrimination does not violate Title VII.

Still, "[a]n employee's complaint may qualify as protected activity, satisfying the first element of th[e] test, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Kelly, 716 F.3d at 15 (quoting Gregory, 243 F.3d at 701).  But this exception does not save McManus' claim. In Kelly, the Second Circuit addressed a similar claim brought on remarkably similar facts. It affirmed the district court's dismissal of the case.

Like McManus, the plaintiff in Kelly, a woman named Gail Kelly, alleged that a supervisor in her company was having "an illicit affair" with a subordinate. According to Kelly, this "clandestine tryst" engendered  "widespread sexual favoritism" and "created an atmosphere in the workplace that was demeaning to women." Id. at 13. The resemblance

---

preferential treatment to Rogers; and (4) Best threatened to fire her.

McManus further argues in her brief that "she complained about Mr. Best's behavior, his status as a womanizer, a stereotype of women as subservient, only not harassing those women who submitted to his behavior and fit into his stereotype, his harassment of those who did not submit, and his threats of termination directed directly towards her." (Pl.'s Br. at 24.) To support this argument, McManus cites a portion of her affidavit where she claims that it was "common knowledge" that Best was a womanizer and where "she was told he had many open relationships." (McManus  Aff., ¶ 23–27.) McManus never asserts that any conduct was directed at her and she does not identify any specific complaints she lodged because of this behavior, or what her complaints might have consisted of. The closest she comes is stating that she "did not just tolerate his behavior and not complain because I was a woman, which was the stereotypical role of women that he expected within the Town." This court has done its best to interpret this sentence. It appears that McManus is attempting to allege that she broke the stereotype that Best desired in female employees by refusing to keep quiet – by not "not complain[ing]." Apparently this Court is to assume, by virtue of the double negative, that this means she did in fact complain. But the question remains: about what? This vague, unclear assertion, lacking any specifics regarding time, date, place, or content of the complaint is clearly insufficient to constitute protected activity. See, e.g., Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011) (informal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII). Attorney Sanders' argument that this portion of McManus' affidavit constitutes evidence that she complained about sex-based discmination is misleading and gratuitous.

to McManus' charge in this case is uncanny. In her internal complaint McManus alleged that Best's "wide spread [sic] favoritism communicates that the only way for female employees to be treated fairly and receive job benefits and advancements is to be romantically involved or a friend of . . . Linda Rogers" and that "this treatment of women employees creates a work environment demeaning to women."

Again like McManus, Kelly also complained about this treatment. But the Second Circuit rejected the claim that her complaints constituted protected activity. "The success of Kelly's claim," wrote the court, "would require us to endorse not only her belief that the law of Title VII is something other than what it is, but also her apparent belief that the definition of 'discrimination' is something other than what it is." Id. at 17. In a *per curium* opinion, the court continued, "We agree with the district court that Kelly has failed to allege facts demonstrating that 'even a legally unsophisticated employee would have a good faith, reasonable belief that the Defendants' preferential treatment of [the paramour] constituted discrimination against Kelly based on gender.'" Id. (quoting Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C., No. 11-CV-5035 ADS AKT, 2012 WL 3241402, at *13 (E.D.N.Y. Aug. 3, 2012) (modifications omitted).

This Court is cognizant that each complaint must be read on its own terms, and that it must assess the reasonableness of the plaintiff's belief that her complaints may qualify as protected activity in light of the "totality of circumstances."[5] See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir.1996). But based on the totality of the circumstances,

---

[5]McManus appears to suggest that the determination of whether an employee holds a 'reasonable belief' that an employer's conduct is prohibited by law is *always* a question of fact to be determined by the trier of fact. (See Pl.'s Br. at 23) ( "The determination of whether or not an employee holds a "reasonable belief" as to whether or not an employer's conduct is prohibited by law is a question of fact that is to be determined by the trier of fact based on the 'totality of the circumstances.'"). Of course this is not so; the Second Circuit in Kelly made that very determination on a motion to dismiss.

and despite passing and vague references to sex-based discrimination in her Human Rights complaint, there can be no doubt that McManus was focused exclusively on the preference Rogers allegedly received because of her relationship with Best. Her complaint then could "not reasonably be believed to have resulted from the fact that [Plaintiff] possessed the protected characteristic of womanhood." Kelly, 716 F.3d at 17. On these grounds, her retaliation claim must therefore be dismissed.

What is more, even if the complaints could be considered protected activity, McManus' claim would fail at prong three of the *prima facie* case. Her complaints were lodged *after* all but one of the allegedly adverse actions, and therefore the complaints and the adverse actions cannot be causally connected to each other.

McManus claims that she was forced to retire, that she was given a smaller office, that her cell phone was revoked, that her office was "bugged," and that her company car was replaced with a less desirable one. But the main accusation – that her decision to enter retirement was compelled – occurred at least as early as January 7, 2010 in a meeting with Supervisor Walters and Councilman Smardz. At that meeting, McManus argues, she "was left with two choices": "agree to Defendant's offer or have her position reduced to part-time and have no guarantee she would be hired for it." (Pl.'s Br. at 12.) But her internal complaint was lodged after that date – in March of that year; and her Human Rights complaint was submitted later still – in September. It cannot be, then, that she was "forced to retire" because of complaints filed after the alleged duress was applied. The same goes for her office relocation and the rescission of her cell phone. Those decisions

16

were also made in January. (<u>See</u> Smardz Letter; dated 1/11/10, Pl.'s Ex. 4; Docket No. 45-2.) Her office was "bugged" even earlier – "in 2008." (McManus Aff., ¶ 37.)[6]

That leaves only the decision to deny McManus' request to rescind her resignation, a decision made in September 2010 after both complaints were filed. McManus attempts to connect, through temporal proximity, this decision with her Humans Rights complaint (made only a few days earlier) and her internal complaint (made a few months earlier). This close proximity, she argues, is evidence that the decision was motivated by a desire to retaliate against her. But while temporal proximity can prove critical in establishing a *prima facie* case, if McManus' version of the events is credited, the decision in September 2010 was inextricably linked to the decision many months earlier in January of 2010, where, by her own account, she was first given the ultimatum to retire or face a demotion. The alleged retaliatory actions therefore clearly began well *before* she filed any complaints. This irrefutable fact vitiates her assertion that the decision to deny her request to rescind her resignation was retaliatory. <u>See, e.g.</u>, <u>Slattery v. Swiss Reinsurance Am. Corp</u>., 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of discrimination does not arise.").

Instead, the only conclusion a reasonable jury could draw from the evidence (viewed in a light most favorable to McManus) is precisely that which she originally attempted to

---

[6]It is unclear when her car was replaced. Though it does appear that it took place before she filed any complaints. In any event, it is of no consequence. There can be no dispute that replacing one gratis car with another – even in conjunction with the other alleged acts – does not constitute an adverse action. <u>Tepperwien v. Entergy Nuclear Operations, Inc.</u>, 663 F.3d 556, 568 (2d Cir. 2011) (internal citation and quotation marks omitted) ("Actions that are 'trivial harms' – i.e., those petty slights or minor annoyances that often take place at work and that all employees experience – are not materially adverse.").

draw: the decisions to reduce her position to part-time, to tamper with her fringe benefits, and to deny her request to revoke her resignation, were made – if any nefarious reason did exist – to make room for Best's alleged paramour, Linda Rogers. But that's not a Title VII claim. And even if McManus had a good faith belief that it were, there is simply not enough evidence, especially considering the timing of the events, to support her contention that any adverse acts would not have occurred "but for" her complaints of discrimination.

## IV. CONCLUSION

Rose Mary McManus alleges that she was discriminated against because Town of Hamburg council members gave preferential treatment to Linda Rogers, who was purportedly having an affair with Town of Hamburg Highway Superintendent Thomas Best. McManus clearly feels wronged by her longtime employer, and this Court is not unsympathetic to that concern. But Title VII does not protect against all unfair treatment in the workplace. It protects against unfair treatment based on sex. Her complaint, and whatever evidence she has presented, falls far short of raising any genuine issue of material fact that she was discriminated against on either this basis or because she filed complaints.  Accordingly, the Town of Hamburg's motion for summary judgment must be granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket

No. 38) is GRANTED,

FURTHER, the Clerk of Court is directed to close this case.

Dated:      May 25, 2014
            Buffalo, New York

                                          /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                              Chief Judge
                                      United States District Court